IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| UNITED STATES OF AMERICA,          )<br>                                    )<br>                    Plaintiff,      ) | **CRIMINAL ACTION** |
|                                    )<br>v.                                  )<br>                                    ) | No. 04-10133-01 |
| MARK E. MILLER,                    )<br>                                    )<br>                    Defendant.     )<br>_____) |  |

**MEMORANDUM AND ORDER**

On February 12, 2007, this case came on for hearing following the Tenth Circuit's mandate remanding the matter for resentencing. Order and Judgment, Case Nos. 05-3293 and 05-3300 (Nov. 3, 2006). Defendant appeared with counsel. The court heard the testimony of Reggie Ford and the statements and arguments of counsel and defendant. In addition, the court considered sentencing memoranda filed by counsel (Docs. 64, 66 and 70) and numerous letters written on behalf of defendant. Finally, the court gave defendant's counsel additional time to provide authority to which defendant alluded in his statement. Counsel has provided the authority in two letters dated February 22, 2007.

The court is now prepared to make a partial ruling with respect to resentencing issues.

Background

The progress of this case from indictment through appeal is set forth in the Tenth Circuit's Order and Judgment and will not be repeated. The Tenth Circuit ruled that this court ". . . erred in rejecting out of hand any consideration . . . of whether defendant had

committed perjury when testifying at his trial and whether a firearm was possessed in connection with the offense charged."

## Obstruction of Justice Enhancement

The government objected to the failure of the presentence report to enhance defendant's base offense level of 28 by two points for obstruction of justice.  The government's objection, as well as its argument in its resentencing memorandum, is that defendant lied when he testified that he was not aware of the crack cocaine found in the house at the time of his arrest.  In response, defendant argues that:

> The critical issue was whether or not Mr. Miller exercised any control over the drugs at any time to the extent that he possessed them with the intent to distribute the drugs. The jury could have found that he exercised sufficient control at some other time without finding that he knew the drugs were present at the time the police arrived.  The possession jury instruction, Instruction No. 9, did not instruct the jury that they had to find Mr. Miller knew the crack cocaine was present in the kitchen when the police were present.  It stated, in part, "[a] person, who although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over an object, either directly or through another person or persons, is then in constructive possession of it."  The jury could have found constructive possession at another time. . . ."

(Doc. 66 at 5).

The jury convicted defendant of knowing possession of approximately 21.37 grams of crack cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.  The 21.37 grams of crack cocaine was found in a kitchen cabinet.  Nearby were a digital scale, a box of sandwich baggies, and a glass beaker containing cocaine residue which bore defendant's fingerprints.  The Tenth Circuit rejected defendant's argument (presumably identical or similar to the one he now makes) that this evidence was insufficient.

Section 3C1.1 of the advisory guidelines provides for a two level enhancement for obstructing or impeding the administration of justice. There is no question that a defendant's false testimony can give rise to an obstruction of justice enhancement. In <u>United States v. Badilla</u>, 383 F.3d 1137 (10th Cir. 2004)(<u>Badilla I</u>), the court stated:

> A district court can constitutionally enhance a defendant's sentence pursuant to U.S.S.G. § 3C1.1 if, upon reviewing the evidence, it makes independent findings that establish a willful impediment or obstruction to justice. <u>United States v. Dunnigan</u>, 507 U.S. 87, 95, 113 S. Ct. 1111, 122 L. Ed. 2d 445 (1993). A willful impediment or obstruction to justice occurs when the defendant gives false testimony under oath concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory. <u>Id.</u> at 94, 113 S. Ct. 1111. A district court's findings regarding the obstruction of justice adjustment must encompass all of the factual predicates of perjury. [<u>United States v. Hawthorne</u>, 316 F. 3d 1140,] 1146 (10th Cir. 2003). This circuit requires that the perjurious statement be identified, at least in substance. <u>Id.</u> The findings suffice if the elements of perjury are generally identified, in a line of questions and answers, such that this court is not forced to simply speculate on what the district court might have believed was the perjurious testimony. <u>See</u> <u>id.</u>

<u>Id.</u> at 112-43.

The following colloquy occurred during defendant's direct testimony.

> Q. Did you know the crack cocaine was still in the cabinet there, in the kitchen cabinet?
>
> A. No, sir. If I would have known that there were drugs in the cabinet, I'm drug addict, I would have smoked the drugs.

This question is related specifically to the crack cocaine which is the basis of defendant's conviction. There is no room for doubt that defendant gave this testimony ". . . concerning a material matter with

-3-

the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory." The court rejects defendant's argument that the elements of perjury are not satisfied unless the evidence demonstrates that he knew about the crack cocaine at the time the police entered the residence.[1]

Accordingly, the court finds that defendant's base offense level of 28 should be increased by two levels which, considering defendant's

---

[1] Six instances of false testimony are set forth in the presentence report, as follows:

> In the present case the defendant testified no less than six times, under oath, that he did not know the "crack" was in the residence with him. The first two instances were on direct and the last four were on cross. On direct the defendant stated, ". . . I didn't even think that there were any drugs or guns in the house because everyone was gone." (R. at 147). In response to the question, "Did you know the crack cocaine was still in the cabinet there, the kitchen cabinet?" The defendant stated, "No, sir." (R. at 149). On cross examination the defendant testified, "I figured since everyone left and left me there knowin' I was there, no one would have left any drugs." (R. at 211). Later on cross examination the defendant stated, "I didn't know there were any drugs there. I also told the officers that night that there were no drugs or no guns in the house." (R. at 216). He further testified that "I was tryin' to smoke; but there was nothing (drugs) in the house. I mean besides what I had." (R. at 219). At the end of his testimony the defendant stated again, ". . . but I didn't believe that there was anything in the house that was illegal beside the drugs I was smokin'." (R. at 222).

These statements reinforce the court's conclusion that defendant's statement, supra, was false.

Badilla I was remanded in light of Booker. In its opinion on remand, the Circuit noted the rather obvious conclusion that: "In finding Badilla guilty of possession with intent to distribute, the jury must have necessarily found that Badilla's testimony on this key question [that he was unaware of the presence of drugs] was false." 419 F.3d 1128, 1134 (10th Cir. 2005), cert. denied, 126 S. Ct. 1344 (2006) (Badilla II). The same conclusion applies in this case. Nevertheless, the court has made the findings required by Badilla I.

-4-

unobjected-to criminal history category of IV, yields an advisory guideline sentence of 135-168 months.

### Firearm Enhancement

The presentence report increased defendant's base offense level by two for possession of a firearm in accordance with U.S.S.G. § 2D1.1(b)(1). Defendant objected to the enhancement on the basis that there was no finding by the jury beyond a reasonable doubt that defendant possessed the firearm. This court summarily sustained defendant's objection and the Tenth Circuit held that this was error.

Defendant's objection to the presentence report was: "The evidence did not link the firearm directly to Mr. Miller by ownership, registration, fingerprint analysis or DNA analysis. The evidence showed that there were numerous individuals in and out of the house and that Mr. Miller was found in a room separate from the room where the officers found a firearm."[2] Defendant repeats and supplements this argument by citation to United States v. Williams, 431 F.3d 1234 (10th Cir. 2005). Defendant's bottom-line argument is that the government's evidence, even when viewed by the preponderance of evidence standard applicable to advisory guideline enhancements, was insufficient to demonstrate that a "temporal and spatial relation existed between the weapon, the drug trafficking activity and the defendant."

The court has given this matter considerable thought and reflection and, contrary to any oral statements made previously, the

---

[2]There is no question that a loaded .22 caliber semi-automatic pistol was found in the living room of the house at the time of defendant's arrest.

-5-

court adheres to its belief that the government's evidence was insufficient to demonstrate that it is more likely true than not true that defendant possessed the firearm in connection with the offense of conviction.

There has never been any evidence that defendant actually possessed the firearm; therefore, the issue turns on constructive possession only. The Tenth Circuit's pattern jury instruction regarding actual or constructive possession (No. 1.31) states, in part:

> A person who, although not in actual possession, knowingly has the power at a given time to exercise dominion or control over an object, either directly or through another person or persons, is then in constructive possession of it.
>
> More than one person can be in possession of an object if each knows of its presence and has the power to control it.
>
> A defendant has joint possession of an object when two or more persons share actual or constructive possession of it. However, merely being present with others who have possession of the object does not constitute possession.
>
> In the situation where the object is found in a place (such as a room or car) occupied by more than one person, you may not infer control over the object based solely on joint occupancy. Mere control over the place in which the object is found is not sufficient to establish constructive possession. Instead, in this situation, the *government must prove some connection between the particular defendant and the object.*

(Emphasis added).

The government cites three cases in support of its argument that its evidence satisfies its initial burden of proving constructive possession by showing mere proximity of the weapon to the offense. The first case is United States v. Contreras, 59 F.3d 1038, 1040 (10th Cir. 1995). In Contreras, the drugs were found in an attached garage

-6-

approximately 25 feet from where the marijuana was found and marijuana residue was found in a closet inside the house.  The firearm was found under a couch in the living room.  The defendant told the officers that the weapon was for personal home protection.  The Tenth Circuit upheld a dangerous weapon enhancement.  In <u>United States v. Smith</u>, 131 F.3d 1392, 1400 (10th Cir. 1997), the court held that personal possession is not necessary and that a sentencing court may "attribute to a defendant weapons possessed by his codefendants if the possession of weapons was known to the defendant or reasonably foreseeable by him." citing <u>United States v. McFarlane</u>, 933 F.2d 898, 899 (10th Cir. 1991).  Finally, the government relies on <u>United States v. Humphrey</u>, 208 F.3d 1190, 1211 (10th Cir. 2000) where the court observed:

> Regan's argument emphasizes the lack of a direct connection between her and the weapon. She contends that in the absence of evidence that she had actual knowledge of the gun, the enhancement could not be properly applied to her. We disagree. The issue is whether Humphrey's possession of the weapon in connection with the conspiracy was reasonably foreseeable to Regan. Regan contends that this case is similar to <u>United States v. Cochran</u>, 14 F.3d 1128, 1131-33 (6th Cir. 1994), in which the application of the dangerous weapon increase was reversed on appeal. The case is not helpful to Regan, however. In that case, the defendant Cochran had accompanied his cousin on a trip to buy drugs. When they were arrested on their return journey, a gun was found under the car seat where the other defendant had been sitting. The defendant testified at sentencing that although he knew the purpose of the trip and had purchased methamphetamine from his cousin on a regular basis, he knew nothing about the gun and did not believe that his cousin would carry a gun in connection with his drug trafficking because he was such a small time dealer.  He also testified that he knew his cousin sometimes carried up to $1,000 when buying drugs.
>
> Here the relationship between these Defendants was much closer than that between Mr. Cochran and his cousin. Accordingly, we do not find that the district judge here committed clear error in finding that Humphrey's possession

-7-

>of the weapon in connection with the trafficking activities was reasonably foreseeable to Regan. The district court did not err in adjusting the offense levels of both Defendants under USSG § 2D1.1(b)(1).

The factual differences between <u>Smith</u> and <u>Humphrey</u> are immediately apparent. There are no codefendants in this case, nor was a conspiracy charged. Furthermore, unlike <u>Contreras</u>, defendant did not admit to possession of the weapon. Simply put, the government's evidence demonstrated that the weapon was found in a "crack house" frequented by others, some of whom had been present shortly before defendant's arrest. Defendant's girlfriend was in the house when the police entered. There was no evidence that defendant ever possessed the weapon or had actual knowledge of its existence. The government's evidence is insufficient, even under a preponderance of the evidence standard, to prove "some connection" between defendant and the weapon.[3] Accordingly, the court declines to apply the enhancement under § 2D1.1(b)(1).

## Application of 18 U.S.C. § 3553

In the presentence report, defendant argued for a departure on the basis that he is a drug addict, not a "typical drug dealer" and that to the extent that the jury found him guilty of possession of crack cocaine with the intent to sell, he did so only to support his

---

[3] The government does not cite <u>United States v. Zavalza-Rodriguez</u>, 379 F.3d 1182, 1187 (10th Cir. 2004) for its statement that "possession in the context of § 2D1.1(b)(1) is therefore possession by proximity-constructive possession." <u>Zavalza</u> stipulated to the two-level enhancement so the court was not required to analyze the issue in light of the jury instruction's requirement that in a joint occupancy scenario, ". . . the government must prove some connection between the particular defendant and the object." This court believes that the government must prove at least "some connection" in order for the enhancement to apply.

habit of "living from one 'fix' to another." Defendant has expanded on this objection in his resentencing memoranda and in statements and arguments made at the resentencing hearing.

Two of defendant's arguments can be rejected summarily: first, resentencing should be stayed because he <u>intends</u> to seek certiorari based on two cases pending before the Supreme Court, <u>Claiborne v. United States</u>, 127 S.Ct. 551, 166 L.Ed.2d 406 (2006) and <u>Rita v. United States</u>, 127 S.Ct. 551, 166 L.Ed.2d 406 (2006). The Tenth Circuit did not stay its ruling in <u>United States v. Ruiz-Terrazas</u>, ___ F.3d ____ (10th Cir., Feb. 26, 2007) because of these cases and this court sees no reason to do so either. Second, defendant asserts that the court lacks jurisdiction based on the case of <u>United States v. Hung</u>, 243 F. 762 (E.D.N.Y. 1917).[4]

Defendant also claims that he is entitled to a variance from the guideline sentence based upon the 100:1 crack/powder cocaine differential. Defendant acknowledges, as he must, that this argument is foreclosed by the Tenth Circuit's decision in <u>United States v. McCullough</u>, 457 F.3d 1150 (10th Cir. 2006) where the court upheld the district court's refusal to impose a lower sentence based on the disparity in the guideline's treatment of crack and powder cocaine. In upholding Chief Judge Lungstrum's ruling, the Tenth Circuit specifically agreed with recent cases from the First and Fourth Circuits which hold that district courts lack authority to ignore or

---

[4]Defendant's counsel has cited <u>Hung</u> at the insistence of defendant. Counsel has acknowledged <u>Gonzales v. Raich</u>, 545 U.S. 1, 125 S. Ct. 2195 (2005), which holds that Congress has the power under the Commerce Clause to impose criminals sanctions for the purely intrastate growth, sale and distribution of marijuana, notwithstanding California law.

-9-

fashion a different crack/powder cocaine differential.  United States v. Pho, 433 F.3d 53, 63 (1st Cir. 2006) and United States v. Eura, 440 F.3d 625, 633 (4th Cir. 2006).[5]

This leaves defendant's argument for a downward variance based upon other factors, i.e., that he is a drug addict with a good education, a good family, military service and, most significantly, that he is not a "major drug dealer."  Defendant argues that his sentence should be reduced to five years imprisonment.

The court has considered defendant's arguments in light of the standards set forth in the recent Tenth Circuit cases of United States v. Valtierra-Rojas, ____ F.3d ____, (10th Cir. 2006), United States v. Mateo, ____ F.3d ____, (10th Cir. 2006), United States v. Sachs, Slip Copy 2006 WL 3804584 (Dec. 28, 2006), United States v. Atencio, ___ F.3d ___, (10th Cir., Jan. 17, 2007) and the cases cited therein. For the following reasons, the court notifies the parties pursuant to Fed. R. Civ. P. 32(h) that it is considering a downward variance from the advisory guideline sentence of 135 to 168 months to the sentence originally imposed, 120 months.  Specifically, for the reasons stated herein and in the absence of persuasive argument to the contrary, the court finds that the original 120 month sentence will be sufficient, but not greater than necessary, to comply with the provisions of 18

---

[5] In United States v. Pickett, ___ F.3d ___, 2007 WL 445937 (C.A.D.C., Feb. 13, 2007), the court determined that ". . . the district court erred in refusing to evaluate whether sentencing [the defendant] in accordance with Guideline § 2D1.1 and its 100-to-1 ratio, would effectuate the purposes of sentencing set forth in § 3553(a).  The D.C. Circuit apparently concluded that the district court had discretion to consider the merits of the 100:1 crack/powder cocaine differential and remanded for resentencing.  Of course, this court is not bound by Pickett.

-10-

U.S.C. § 3553(a).[6]

The court will comment briefly on the letters written in support of defendant, which also implicate the § 3553 factors.  In the past fifteen years, this court has sentenced many, many defendants charged with drug offenses.  Despite arguments to the contrary, drug trafficking is not a "victimless" offense.  Every drug trafficking offense is serious and any person who engages in drug trafficking disrespects the law.  These precepts apply to large scale drug traffickers and mere street dealers and the law recognizes the difference by providing for different sentences. Defendant may be a mere street dealer who has sold drugs merely to fund his drug addiction.  But, as demonstrated by his criminal history, his participation in the drug trade is long-standing and extensive.  By his actions, defendant has helped perpetuate and spread the drug trade in Wichita.  Despite his previous encounters with law enforcement, defendant has not been deterred from this activity.  Were it not for this case, it is very clear from defendant's own testimony that he would be involved in drug activity today because of his addiction. The public is entitled to protection from this conduct.  The court recognizes the myriad aspects of drug addiction and the difficult obstacles confronting addicts who truly wish to "kick the habit."  In this case, defendant appears to be an intelligent individual with some educational attainments, all of which support the conclusion that he has the capability of coming to grips with his drug addiction and leading a drug-free, productive life.  He is apparently working

---

[6]Defendant does not argue that the court should depart downward based on Chapter 4 of the advisory guidelines.

-11-

towards that goal during his imprisonment and he will continue to benefit from the help and encouragement from family and friends upon his release.

### Rule 32(h)

The court intends to reimpose a sentence of 120 months imprisonment. If either the government or defendant wish to offer further argument or authority with respect to this intended sentence, they must file memoranda on or before March 2, 2007. Final sentence will be imposed on March 5 at 9:45 a.m.

IT IS SO ORDERED.

Dated this __27th__ day of February 2007, at Wichita, Kansas.

s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE